UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Beattie B. Ashmore, in his capacity as court-appointed receiver for Ronnie Gene Wilson and Atlantic Bullion and Coin, Inc., ) ) ) ) | Civil Action No.: 8:15-cv-2373-JMC |
| Plaintiff, ) ) | |
| v. ) ) | **ORDER AND OPINION** |
| Brigitte Owens, ) ) | |
| Defendant. ) ) | |

Plaintiff Beattie B. Ashmore ("Receiver"), in his capacity as court-appointed Receiver for Ronnie Gene Wilson ("Wilson") and Atlantic Bullion and Coin, Inc. ("AB&C"), filed this action against Defendant Brigitte Owens ("Defendant") to recover direct payments from the Wilson-AB&C Ponzi scheme.[1]

This matter is before the court pursuant to Receiver and Defendant's competing Motions for Summary Judgment (ECF Nos. 51, 65.) For the reasons set forth below, Defendant's Motion for Summary Judgment is **DENIED** (ECF No. 51), and Receiver's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** (ECF No. 65).

---

[1] "A Ponzi scheme is a fraudulent investment program in which funds are paid in by investors and later investors['] funds are used to pay out nonexistent phantom profits to the original investors, thus creating the illusion that the fraudulent investment program is a successful, profit generating enterprise which, in turn attracts new investment funds that are used to sustain the fraudulent program." *United States v. Wilson*, Cr. No. 8:12-cr-00320-JMC (D.S.C. Apr. 4, 2012) (ECF No. 1-1 at 2 ¶ 6.)

## I. PROCEDURAL BACKGROUND

On July 30, 2012, Wilson and AB&C pled guilty to two counts of mail fraud stemming from their involvement in a criminal Ponzi scheme involving hundreds of victims and millions of dollars. (ECF No. 54 at 1.) On November 13, 2013, Wilson was sentenced to a 235-month term of imprisonment. (*Id*.) On that same date, AB&C was sentenced to a five year term of probation and a fine was imposed. (*Id*.) Wilson and AB&C were ordered to pay restitution in the amount of $57,401,009.00. (*Id*.) On August 12, 2014, Wilson was again indicted on one count of obstruction of justice related to his efforts to secrete assets from the Government and court-appointed Receiver. (*Id*.) On October 6, 2014, Wilson entered another guilty plea, and on December 10, 2014, was sentenced to an additional term of imprisonment. (*Id*. at 2.)

As a result of the criminal investigation into the fraudulent investment scheme orchestrated by Wilson and AB&C, an Order was entered appointing Beattie B. Ashmore as the Receiver. *See Wilson*, 8:12-cr-00320-JMC (ECF No. 39.) The Order set forth the duties of the Receiver to include marshaling and safeguarding the assets of Wilson and AB&C and other so defined entities (hereinafter the "AB&C Receivership Entities") in an effort to ultimately make a return to the victims of Wilson's criminal activities. (*Id*.) The Order requires the Receiver, among other things, to locate and manage assets previously acquired by and/or in the name/possession of the AB&C Receivership Entities. (*Id*.) In addition, the Order directs the Receiver to initiate legal proceedings for the benefit of the AB&C Receivership Entities including, but not limited to, suits for disgorgement of profits. (*Id*.)

On June 11, 2015, Receiver filed a Complaint against Defendant for unjust enrichment and fraudulent transfer under the Statute of Elizabeth, S.C. CODE ANN. 27-23-10 (2014), and/or the North Carolina Uniform Voidable Transactions Act, N.C. GEN. STAT. § 39-23.1, *et seq*. (2015)

("UVTA").[2] (ECF No. 1.) Under both claims, Receiver seeks $255,190.00 (the amount of "profit" Defendant received from her investment) from Defendant "for the ultimate benefit of distribution to the court-approved victims of the Ponzi scheme." (ECF No. 1 at 7.) On April 14, 2017, Defendant filed a Motion for Summary Judgment, asserting: (1) Receiver lacks Article III standing; (2) prudential standing considerations likewise preclude the action; (3) Receiver lacks constitutional capacity to sue; (4) Receiver's appointment was invalid; (5) Receiver's South Carolina law claims fail because (a) Receiver has not shown inadequacy of relief at law, (b) the statute of limitations bars the stale claims, and (c) Receiver lacks statutory standing under the Statute of Elizabeth; (6) Receiver's North Carolina law claims fail under the UVTA; and (7) Receiver's unjust enrichment claim fails. (ECF No. 51.)

On April 28, 2017, Receiver filed a response in opposition to Defendant's Motion, largely asserting that Defendant's procedural and substantive arguments were meritless. (ECF No. 54.) On May 4, 2017, Defendant filed a reply to Receiver's response, essentially reasserting her arguments in her Motion for Summary Judgment. (ECF No. 56.)

On June 7, 2017, Receiver filed a Motion for Summary Judgment, asserting that there are no genuine issues of material fact as to Receiver's unjust enrichment claim and fraudulent transfer claim. (ECF No. 65.) On June 20, 2017, Defendant filed a response in opposition to Receiver's Motion, incorporating her arguments from her Motion for Summary Judgment, with the added argument that she acted in good faith. (ECF No. 69.) On June 30, 2017, Receiver filed a reply to Defendant's response, restating his belief that Defendant's arguments were meritless. (ECF No. 75.)

---

[2] UVTA was formerly called the Uniform Fraudulent Transfer Act, N.C. GEN. STAT. § 39-23.1, *et seq*. (1997).

## II. FACTUAL BACKGROUND

To effectuate the fraudulent investment scheme, Wilson, through other persons and his company, AB&C, conducted seminars to recruit individuals to invest in silver bullion with promises of unconventionally high rates of return. (ECF No. 65 at 2.) Defendant invested in and profited from this fraudulent investment scheme at the expense of those investors who lost part or all of their investment. (*Id.*) Defendant is considered a "net winner," meaning she received more money than she invested. (*Id.*) On May 10, 2006, Defendant's then-husband invested $40,000 with AB&C on her behalf and without her advance knowledge.[3] (ECF No. 90 at 3.) Defendant's net profit from this scheme was $255,190.00, a 723% return on her investment. (*Id.*)

As part of the scheme, investors deposited monies, by cash, check, or wire, with Wilson/AB&C, but were not asked to or required to enter into a written agreement. (ECF No. 65-2 at 8.) In this case, Defendant never met with Wilson to discuss the investment made on her behalf. Further, Defendant was not required to provide a social security number, IRS W-9 form, driver's license, or personal information (e.g., annual income, net worth exclusive of home, liquid net worth, outstanding debt, tax bracket, number of dependents, occupation, investment experience). (*Id.* at 9; ECF No. 65-4 at 2.) Defendant admits in her deposition that no online access to her account was available. (ECF No. 65-2 at 6.) Additionally, she admits that she never received a trade confirmation and that no interest was earned on her money that Wilson held for her. (*Id.* at 7-8.)

Defendant did not receive statements on a regular basis and admits in her deposition that she did not review her statements for accuracy. (*Id.* at 5, 11.) Although Wilson told Defendant

---

[3] Defendant was made aware of the investment by her then-husband in 2007. (ECF No. 65-2 at 3.)

that a commission would be charged, no commission ever appeared on a statement. (*Id*. at 7.) Defendant did not have control as to when Wilson bought and sold silver. (*Id*. at 10.) She never inquired whether Wilson/AB&C was licensed or registered to buy and sell silver bullion. (*Id*. at 7.) Defendant never received year-end tax reporting documents including, but not limited to 1099s. (ECF No. 65-2 at 9.) She did not report the profit from her investment on her federal tax returns and kept it from her accountant. (*Id*. at 9-10.)

At one time, Wilson's statements indicated that Defendant owned 11,800 ounces (weighing a half of a ton) of silver, but never paid any money to store the silver. (ECF No. 65 at 4.) She did not know where the silver was purportedly stored, never asked where the silver was purportedly stored, and never asked to take possession of the silver. (ECF No. 65-2 at 10.) Defendant even admitted that she did not know if Wilson was actually buying and selling silver on her behalf. (*Id*. at 7.)

### III.    JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. § 1331 pursuant to Receiver's allegation that the Complaint "is so related to the *In Re Receiver*, 8:12-cv-2078-JMC, case and the underlying criminal case, *United States v Wilson, et al*, 8:12-cr-00320[,]" cases in which the court has jurisdiction, "that it forms part of the underlying case or controversy." (ECF No. 1 at 1 ¶ 3.) The court may properly hear Receiver's state law claims for fraudulent transfer and unjust enrichment based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ." 28 U.S.C. § 1367(a).

## IV. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor.'" *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving part[ies]," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248.

The movant bears the initial burden of demonstrating to the court that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this threshold showing has been made, the non-moving party cannot survive summary judgment by resting on the allegations in the pleadings. Rather, the non-moving party must provide specific, material facts giving rise to a genuine issue. *See id*. at 324. Under this standard, the mere scintilla of evidence is insufficient to withstand the summary judgment motion. *See Anderson*, 477 U.S. at 255 (1986).

## V. ANALYSIS

### A. Defendant's Motion for Summary Judgment

#### 1. Procedural Arguments

In her Motion, Defendant asserts a number of disjointed arguments in support of summary judgment. First, Defendant asserts that Receiver lacks standing. (ECF No. 51-1 at 3-5.) However, a Receiver has standing to sue for unjust enrichment and fraudulent transfers in the context of a Ponzi scheme. *See Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995) ("The Appointment of the receiver removed the wrongdoer from the scene [and the corporations] became entitled to the

return of the moneys—for the benefits not of [the wrongdoer] but of innocent investors—that [the wrongdoer] had made the corporations divert to unauthorized purposes." The South Carolina Court of Appeals has cited *Scholes* with approval. *See Myatt v. RHBT Fin. Corp.*, 370 S.C. 391, 396 (S.C. Ct. App. 2006).

Moreover, federal courts in South Carolina have consistently recognized claims by Receivers against profit takers of Ponzi schemes for unjust enrichment and claims brought pursuant to the Statute of Elizabeth. *See, e.g.*, *Ashmore v. Fowler*, No. 8:14-cv-0449, 2016 WL 4089551 (D.S.C. Aug. 2, 2016); *Ashmore v. Richardson*, No. 3:12-cv-00431-MBS, 2012 WL 5985659 (D.S.C. Nov. 28, 2012); *Ashmore v. Taylor*, No. 3:13-cv-02303-MBS, 2014 WL 6473714 (D.S.C. Nov. 18, 2014); *Ashmore v. Cook*, No. 3:13-cv-01449-MBS, 2013 WL 6283508 (Dec. 4, 2013). Further, Defendant espouses that if North Carolina's UVTA is to apply to the fraudulent transfer claim (as she contends it does), Receiver does not have statutory standing. (ECF No. 51-1 at 10.) This statement is incorrect. *See Bell v. Disner*, No. 3:14-cv-91, 2014 WL 6978690, at *5 (W.D.N.C. Dec. 9, 2014) (citing *Scholes*, 56 F.3d 750) ("It is well-settled that a Receiver has standing to assert claims for fraudulent transfer under the [UVTA] because the Receivership entity was harmed by the diversion of those assets."). Therefore, Defendant's arguments regarding Article III standing, prudential standing, and statutory standing are without merit.[4]

2. **Substantive Arguments**

Defendant asserts that Receiver's South Carolina law claims against her are precluded because Receiver, on behalf of Wilson/AB&C, did not first file bankruptcy. (ECF No. 51-1 at 6.)

---

[4] The court finds that Defendant's arguments that Receiver lacks constitutional capacity to sue because there is no evidence he took an oath of office, or that his appointment was invalid because he did not get a concurrence of a majority of the court's judges (ECF No. 51-1 at 5-6), are wholly without merit, and therefore need not be addressed.

7

Defendant does not cite to any authority, and the court does not find any, that suggests there is a requirement in South Carolina that a party asserting a claim for unjust enrichment or a claim pursuant to the Statute of Elizabeth must first file for bankruptcy.

Defendant further argues that the claims are barred by the statute of limitations. (ECF No. 51-1 at 7.) As stated by this court in *Ashmore v. Fowler*, a case filed by Receiver asserting the same claims as this case, the claims are governed by a three-year statute of limitations and the discovery rule. 2016 WL 4089551, at *6. Additionally, the court held in *Fowler* that a claim brought at the very least within three years of the Receiver's appointment was within the statute of limitations. *Id*. In this case, Receiver was appointed by the court on June 13, 2012. *See Wilson*, 8:12-cr-00320-JMC (ECF No. 31.) The suit against Defendant was filed on June 11, 2015, within three years of the appointment of Receiver. (ECF No. 1.) For these reasons, Defendant's argument regarding the statute of limitations is without merit.

**B. Receiver's Motion for Summary Judgment**

In the parties' Joint Motion for Rulings and Stipulations, the parties requested a decision on Receiver's claim for unjust enrichment prior to ruling on the statutory claims. (ECF No. 90 at 5.) The parties stipulated that "under South Carolina state choice-of-law principles, South Carolina substantive law applies to the claim for unjust enrichment." (ECF No. 90 at 2.) Receiver stated that he "maintains that a claim for unjust enrichment can be brought, in addition to, or as an alternative to, a claim for fraudulent transfer, particularly in this case when the relief sought is the exact same." (*Id*. at 3.) Further, the parties agree "*if* the court's disposition of the unjust enrichment claim does not dispose of the entire case, [*then*] the parties consent to a bench trial instead of a jury trial on any claim brought under South Carolina's Statute of Elizabeth, S.C. CODE ANN. § 27-23-10 (2014) or North Carolina's Voidable Transfer Act, N.C. GEN. STAT. § 39-23.1,

8

*et seq.* (2015) (emphasis added). As such, because the court finds that Receiver prevails on the unjust enrichment claim, it is unnecessary to delve into an analysis of the fraudulent transfer claim and whether South Carolina or North Carolina law applies. The fraudulent transfer claim is therefore moot.

1. **Unjust Enrichment**

To prevail under a theory of unjust enrichment, a plaintiff must demonstrate the following elements: "(1) [a] benefit conferred by [the] plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 385 S.C. 452, 467 (S.C. 2009) (internal quotation omitted). "A party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another." *Inglese v. Beal*, 403 S.C. 290 (S.C. Ct. App. 2013) (quoting *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 678 S.E.2d 430, 434 (S.C. 2009)).

In this case, Defendant was conferred a gross benefit by AB&C in that she received payoffs totaling $295,190.00 after her ex-husband made a deposit of $40,000.00 on her behalf. (ECF No. 90 at 3.) Second, Defendant realized the benefit as she kept the funds and used them exclusively for her benefit. Specifically, monies received from Wilson/AB&C were deposited in a "house account" used to build a home for Defendant. (ECF No. 65-2 at 2.) Third, it is inequitable for Defendant to retain the profit as the monies were obtained by fraud and injured both the Receivership Entities and other investors who lost money as a result of the fraud. *See Ashmore v. Cook*, 2013 WL 6283508, at *5 ("[I]t would be inequitable for Defendant to enjoy an advantage over later investors sucked into the Ponzi scheme who were not so lucky.").

Defendant makes a number of rebuttal arguments to Receiver's unjust enrichment claim that lack factual and legal foundation. First, Defendant argues that the doctrine of laches bars Receiver's claims. (ECF No. 69 at 6.) In its Order on Receiver's Motion for Protective Order, the court found that Receiver's claims were filed "comfortably" within the statute of limitations, and in granting Receiver's Motion (in part), rejected the argument that Receiver needed to be deposed to explore the issue of laches. (ECF No. 64 at 8.) Again, Defendant recites the same arguments regarding the statute of limitations and filing for bankruptcy that the court disposes of above.

Next, Defendant contends that Receiver "is estopped from denying . . . the profits" set out in the AB&C statements because the parties had an "express contract." (ECF No. 69 at 6.) There was never any contract or written agreement. Defendant did not know Wilson, did not herself make an investment with Wilson, and did not know the manner in which the investment operated. (ECF No. 65-2 at 6-7.) Additionally, Defendant argued that because the payments were made to her intentionally, they may not be "unwound." (ECF No. 69 at 7.) The intentionality of the payments does not eradicate its fraudulent nature, and therefore this argument is without merit.

Lastly, Defendant espouses that she acted in good faith, and consequently should not be deprived of her funds to pay out to other investors. (ECF No. 69 at 8.) A net winner cannot retain fictitious "profits," without accounting to the victims first. *See In Re Young*, 294 F.1, 4 (4th Cir. 1923). The Fourth Circuit has explained that, as to a net winner, "all sums paid as profits to one [investor] from the common funds, when there was no profit, was an unjust enrichment of that [investor]." *Id*. Thus, Defendant was unjustly enriched and Receiver is entitled to relief in this case to help compensate the Ponzi scheme's victims.

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED** (ECF No. 51), and Receiver's Motion for Summary Judgment is **GRANTED IN PART** as to the unjust enrichment claim, and **DENIED IN PART** because the fraudulent transfer claim is moot (ECF No. 65). The court finds that Defendant owes Receiver $255,190.00 stemming from the aforementioned Ponzi scheme.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

November 17, 2017
Columbia, South Carolina